# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **R.M.-1 and R.M.-2**

**No. 20-0147** (Hampshire County 19-JA-24 and 19-JA-25)

## MEMORANDUM DECISION

Petitioner Father J.M., by counsel Eric S. Black, appeals the Circuit Court of Hampshire County's November 1, 2019, order terminating his parental rights to R.M.-1 and R.M.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Joyce E. Stewart, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period, terminating his parental rights, and denying his request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition against the parents after law enforcement executed a search of their home and discovered stolen contraband, firearms, drug paraphernalia, scales, smoking devices, and methamphetamine. Upon the parents' arrests, the DHHR removed the children from the home. Petitioner denied trafficking drugs and blamed strangers for bringing drugs into the home. After the preliminary hearing, the circuit court ordered petitioner to participate in regular drug screenings and supervised visitation with the children.

At an adjudicatory hearing held in June of 2019, petitioner stipulated that he failed to protect the children from "drug culture," including exposure to known drug users, and that drug contraband was found in the bathroom within reach of the children. He further acknowledged that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as R.M.-1 and R.M.-2, respectively, throughout this memorandum decision.

he had a substance abuse problem and was seeking medically assisted treatment at a facility in Maryland. Petitioner stated that he understood that he would be required to maintain sobriety and follow the recommendations of his case plan. The circuit court accepted the stipulation and adjudicated petitioner as an abusing parent. The circuit court held petitioner's previously filed motion for a post-adjudicatory improvement period in abeyance. In July of 2019, the DHHR filed the case plan, which required petitioner to (1) attend substance abuse classes and narcotics anonymous meetings, (2) participate in a parental fitness evaluation, (3) participate in adult life skills classes, (4) attend individualized parenting sessions, and (5) attend all scheduled supervised visitations. The same month, the circuit court held two status hearings. At the first status hearing, the DHHR presented evidence that petitioner had not complied with regular drug screenings or signed releases to confirm his participation in a medically assisted treatment program. The circuit court ordered services to continue in order to allow petitioner the chance to comply with drug screenings. At the second status hearing, the DHHR presented evidence that petitioner had not only failed to comply with drug screenings but had also failed to comply with supervised visitations. The circuit court ordered services to continue to allow petitioner additional time to comply with drug screenings and supervised visitations but also set the matter for disposition.

In September of 2019, the circuit court held a dispositional hearing, wherein the DHHR presented evidence that petitioner continued to regularly miss drug screens, substance abuse classes, and narcotics anonymous meetings; continued to lie to the DHHR workers; failed to submit his prescriptions for his Suboxone; failed to wear his PharmChek/Sweat Patch;[2] and regularly showed up late to supervised visitations and other appointments. The DHHR also presented evidence that petitioner tested positive for methamphetamine and buprenorphine several times since his adjudicatory hearing in June of 2019. Finally, the DHHR worker testified that petitioner minimally complied with services given the number of his "no shows for both classes and drug screens" and that he had never admitted having a drug problem to a DHHR service provider. Following the hearing, petitioner was incarcerated for violating the terms and conditions of his probation.

The final dispositional hearing was held in October of 2019. Petitioner presented evidence in support of his motion for a post-adjudicatory improvement period. Petitioner testified that the children were wrongfully taken from his home because they were "never at risk." He further testified that there were no drugs in the home at the time of the children's removal. The DHHR presented evidence of petitioner's noncompliance with services and argued in favor of terminating his parental rights. The circuit court found that petitioner blamed others for the police finding drugs in his home and never acknowledged that the children were at risk, despite his stipulations at adjudication. As such, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Further, the circuit court denied petitioner's request for post-termination visitation. Ultimately, the circuit court terminated petitioner's parental rights by order entered on November 1, 2019. It is from that dispositional order that petitioner appeals.[3]

---

[2]This device gathers a sample of the patient's sweat over a ten-day period to submit for drug testing.

[3]The mother's parental rights were also terminated below. She appealed, and this Court affirmed the circuit court's order by memorandum decision. *See In re R.M.-1,* No. 19-1090, 2020

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying him a post-adjudicatory improvement period. Specifically, petitioner contends that although his initial compliance with drug testing was not consistent and he tested positive for substances, he was able to remain sober for some negative drug screens. Petitioner claims he acknowledged his substance abuse problem and was likely to participate in an improvement period given his admission into a drug detoxification program. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. The record establishes that petitioner did not consistently participate in services, as he often missed drug screens or tested positive for substances. Petitioner blamed the distance between his place of employment and the drug testing site for his lack of compliance with drug screenings, but cites to nothing in the record to show he requested that the DHHR accommodate him in regard to this issue. Petitioner also failed to regularly attend his substance abuse classes, narcotics anonymous meetings, adult life skills classes, and individualized parenting sessions. Further, petitioner's supervised visitations were suspended several times due to his

WL 3470352 (W. Va. June 25, 2020)(memorandum decision). According to the parties, the permanency plan for the children is adoption in their foster home.

noncompliance. Contrary to petitioner's argument that he acknowledged the severity of his substance abuse problem, the record indicates that petitioner remained defensive throughout the proceedings, blamed others for his children's removal, blamed others for the drug contraband found in the home, and denied or minimized his drug use. Although by the time of the dispositional hearing petitioner represented to the circuit court that he would enter an inpatient rehabilitation program and/or drug detoxification program, the circuit court expressed its belief that petitioner would not attend. We note that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Most importantly, petitioner failed to acknowledge how his actions constituted abuse and/or neglect. Despite numerous positive drug screens throughout the proceedings, petitioner continuously failed to acknowledge the severity of his drug addiction and placed blame for any abuse and neglect of the children on others. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to acknowledge his drug addiction and complete lack of insight as to how his actions constituted abusive and neglectful behavior, it is clear that the grant of an improvement period would have been futile. Accordingly, we find that petitioner is entitled to no relief in this regard.

We likewise find that the evidence set forth above supports the termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are directed to terminate parental rights upon finding that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts."

As evidenced above, petitioner failed to follow through with his case plan. Specifically, petitioner failed to comply with the DHHR's services by testing positive for controlled substances, missing drug screens, removing his PharmChek/Sweat Patch, missing appointments, showing up late to supervised visitations, missing classes, and lying to DHHR workers. Clearly, petitioner failed to avail himself of the services designed to assist in his reunification with the children. He never explained why he had positive drug screens when he was allegedly under the care of a medically assisted treatment program. He continued to fail to report for drug screenings, which were tied to his ability to visit the children. Further, petitioner claimed that the children were never at risk while in his care, despite his stipulations at adjudication. Finally, petitioner minimized or denied his drug use and blamed strangers for the events that lead to the children's removal. Given

petitioner's very minimal compliance with the DHHR's case plan, the record supports the finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the children's welfare.

Lastly, petitioner argues that the circuit court erred in denying his request for post-termination visitation with the children. According to petitioner, he has a "close personal bond" with the children. Further, petitioner believes that post-termination visitation would not be detrimental to the children. We disagree.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).

The evidence below demonstrates that post-termination visitation would not have been in the children's best interests. In light of petitioner's noncompliance with supervised visitations, the circuit court found no confidence in his ability to comply with or follow through with any directives of the circuit court if he were granted post-termination visitation. Further, petitioner's substance abuse remained untreated and he failed to acknowledge how his actions constituted abuse and neglect of the children. Accordingly, we find no error in the circuit court's decision to deny petitioner post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 1, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison